IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TOMMY KASALO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 10 C 1643 |
| v. | ) | |
| | ) | |
| NCSPLUS INCORPORATED and GARY C. | ) | Suzanne B. Conlon, Judge |
| COOKE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Tommy Kasalo sues NCSPLUS, Incorporated and attorney Gary C. Cooke under the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* based on letters he received

regarding a debt he incurred for an automotive sales training course by Williams & Associates.

Attached to his amended complaint are a statement from Williams & Associates reflecting a

balance of $88.26 in December 2007, and two letters—one from NCSPLUS and one from

Cooke—seeking payment of $1,020.03 in March 2009. Kasalo filed suit as a class action but

later struck the class action allegations, leaving only his individual claims against NCSPLUS and

Cooke. Defendants move for summary judgment.

### I. Procedural Background and Local Rule 56.1

After defendants moved for summary judgment, the court set a response date of May 11,

2011. Kasalo did not comply. On June 1, 2011, Kasalo requested and was granted an extension

of time to respond. Kasalo's response, however, does not conform to N.D. Ill. Local Rule 56.1.

Defendants submitted a statement of material facts in accordance with Local Rule 56.1(a)(3).

1

Kasalo did not file a concise response to each of defendants' statements containing numbered paragraphs corresponding to defendants' statements, nor did he submit his own statement of material facts. N.D. Ill. Loc. R. 56.1(b)(3). Instead, he submitted a memorandum incorporating both his argument against summary judgment and his version of the facts, and attached exhibits to his memorandum. Kasalo fails to properly contest defendants' statement of material facts, so defendants' facts are deemed admitted to the extent they are supported by admissible evidence. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Kasalo's asserted facts and exhibits are disregarded for failure to comply with Local Rule 56.1. *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008).

Kasalo objects to two of defendants' evidentiary submissions. First, he contends Cooke's statement in his affidavit that Allied Funding Group placed Kasalo's account in the amount of $1,020.03 for collection is hearsay because Cooke relies on Allied Funding Group's communications with NCSPLUS for that information. Hearsay precludes a witness from asserting as fact a statement made by someone else. FED. R. EVID. 801(c); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Cooke states he learned the amount of the debt placed for collection from Kasalo's file. Defendants do not explain why Cooke's statement is not hearsay or offer an exception to the hearsay rule. Kasalo's objection is sustained to the extent that defendants use Cooke's affidavit to prove that Allied Funding Group actually placed $1,020.03 for collection.

Kasalo contends the affidavit of NCSPLUS Vice President Lynn Goldberg is also insufficient to prove the amount of debt placed for collection by Allied Funding Group because the affidavit violates the best-evidence rule. FED. R. EVID. 1002. Goldberg states "the total

amount placed with NCSPLUS was $1,020.03" but does not provide any documentation. Def. Ex. D. at ¶ 6. The best-evidence rule requires that if an affiant bases a statement on knowledge learned from a document, that document must be provided. *Waterloo Furniture Components, Ltd. v. Haworth, Inc.*, 467 F.3d 641, 648–49 (7th Cir 2006). Defendants dispute that they are required to provide documentation to support Goldberg's affidavit, but they do not contest that Goldberg learned this information from a document. Defendants provide "Account Notes" that were referred to in Goldberg's affidavit, but the "Account Notes" do not include Allied Funding Group's correspondence with NCSPLUS about the amount owed. The account notes are an NCSPLUS document listing the account details and actions taken. This objection is sustained. Goldberg's affidavit is not admissible to prove the amount of the debt placed for collection was $1,020.03.

## II. Facts

The following facts are taken from defendants' statement of material facts as modified by the evidentiary objections discussed above. All reasonable inferences are drawn in Kasalo's favor. *Bourke v. Conger*, 639 F.3d 344, 346–47 (7th Cir. 2011). Williams & Associates first attempted to collect the debt on its own. On November 27, 2007, it sent Kasalo a request for $88.26. Def. Facts ¶ 33. On February 28, 2008, the balance increased to $485.02. *Id.* The balance increased to $510.02 on March 26, 2008, and $535.02 on April 25, 2008. *Id.* Williams & Associates sold the unpaid debt to Allied Funding Group. *Id.* ¶ 7. In January 2009, Allied Funding Group placed the overdue account with NCSPLUS for collection. *Id.* ¶ 7–8. On January 9, 2009, NCSPLUS sent Kasalo a collection letter seeking $1,020.03. *Id.* ¶ 9.

NCSPLUS sent Kasalo further correspondence on February 12 and February 26, 2009, attempting to collect $1,020.03. *Id.* ¶¶ 10–11.

When Cooke became involved, he traveled to NCSPLUS's offices and reviewed Kasalo's file and a collection letter prepared by NCSPLUS. Def. Facts ¶¶ 12–13. Cooke confirmed that the balance stated on the account matched the amount stated by the creditor and ensured the file did not indicate any bankruptcy filing information, attorney representation information, or anything else that would prohibit him from contacting Kasalo. *Id.* ¶¶ 13–14. Cooke also reviewed the promissory note that Kasalo signed; Allied Funding Group represented the debt arose from Kasalo's note. *Id.* ¶ 14. Cooke determined he could send Kasalo a collection letter. *Id.* ¶ 15. On March 12, 2009, Cooke sent Kasalo a letter stating that Kasalo owed $1,020.03 to the creditor Allied Funding Group. *Id.* ¶ 16. This is one of the offending letters Kasalo attaches to his amended complaint.

On March 19, 2009, NCSPLUS sent Kasalo a collection letter for $1,020.03. Def. Facts ¶ 17. This letter is also attached to the amended complaint and forms the basis for the suit against NCSPLUS. The letter states that NCSPLUS "ha[s] written to you in the past" and "unless payment is received within thirty days, our client has authorized us to report this delinquent account to one or more national credit bureaus." *Id.*, Am. Compl. Ex. D. At the bottom of the letter, NCSPLUS directs Kasalo to send payment to Allied Funding Group at the given address. *Id.*

A few days after the March 19 letter was sent, NCSPLUS received correspondence from Kasalo's attorney. Def. Facts ¶ 20. NCSPLUS discontinued all collection efforts on Kasalo's account. *Id.* ¶ 21. It is NCSPLUS's regular practice to report delinquent accounts placed by

Allied Funding Group for collection to national credit bureaus within thirty days of the date of the debt. *Id.* ¶ 23. But if contacted by a debtor's attorney, NCSPLUS does not report the delinquent account and discontinues all collection activity. *Id.* ¶¶ 23–25. NCSPLUS did not credit report Kasalo's account, but would have if Kasalo's attorney had not contacted it. *Id.* ¶¶ 22, 26.

## III. Analysis

This case highlights an often-overlooked aspect of the familiar summary judgment standard, namely the movant's initial burden. The movant bears the burden of establishing the non-existence of a genuine material dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994). Only after the movant establishes no genuine disputed material facts exist, the burden shifts to the non-movant to go beyond the pleadings and point to evidence creating a material factual dispute for trial. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ("[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented" (alteration in original) (quoting Advisory Committee Note to 1963 Amendment to Fed. R. Civ. P. 56)); *Paul v. Theda Medical Ctr., Inc.*, 465 F.3d 790, 793–94 (7th Cir. 2006). Because Kasalo's evidence must be disregarded, factual issues may be decided adversely to him. *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 359–60 (7th Cir. 2009).

Kasalo alleged more than a dozen violations of the FDCPA in his amended complaint, but limits his summary judgment response to four claims: (1) NCSPLUS and Cooke falsely represented the amount of the alleged debt in violation of § 1692e(2); (2) NCSPLUS and Cooke

attempted to collect an amount not authorized by the promissory note or permitted by law in violation of § 1692f(1); (3) NCSPLUS threatened to credit report the debt but never intended to in violation of § 1692e(5); and (4) NCSPLUS and Cooke engaged in prohibited flat-rating in violation of § 1692e(3), (10), and § 1692j.

## A. Amount of Debt

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means with the collection of any debt," including falsely representing "the character, amount, or legal status of any debt." § 1692e(2)(A). No scienter is necessary; an unintentional false representation violates the FDCPA. *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). The standard for liability is whether the representation would mislead or deceive an unsophisticated consumer. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007).

Kasalo's theory is that he did not owe $1,020.03 to Allied Funding Group. He does not submit evidence affirmatively establishing the actual amount owed in January 2009 when NCSPLUS was hired to collect the debt. Rather, he relies on showing that defendants did not meet their initial burden to establish the absence of a dispute. Defendants may show the absence of a genuine dispute about the amount owed either by citing to parts of the record that prove Kasalo owed $1,020.03, FED. R. CIV. P. 56(c)(1)(A), or by showing Kasalo cannot produce admissible evidence that he did not owe $1,020.03, *Id.* 56(c)(1)(B). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986). Defendants attempted to clear this hurdle by affirmatively proving that Allied Funding Group placed $1,020.03 for collection. But Kasalo's hearsay objections obviate defendants' affidavits concerning the amount of his debt. Defendants' assertion that

6

there is no genuine dispute as to the amount placed for collection is not supported by admissible evidence. It is insufficient for defendants to state conclusorily in their brief that "Plaintiff has failed to present any evidence that the Plaintiff does not owe $1,020.03," Def. Br. at 8. *See Celotex*, 477 U.S. at 328 (White, J., concurring) ("It is not enough to move for summary judgment . . . with a conclusory assertion that the plaintiff has no evidence to prove his case"). Defendants have not shown the absence of a dispute regarding whether the amount they sought to collect was accurate.

Even assuming Allied Funding Group placed $1,020.03 for collection, defendants do not assert that $1,020.03 is an accurate statement of the debt Kasalo legally owes Allied Funding Group. It is possible that if Allied Funding Group inaccurately calculated that Kasalo owed $1,020.03, defendants could still be liable under § 1692e because the collection letter would falsely represent the amount of debt. *Cf. Turner v. JVDB & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (finding facial violation of § 1692e when debt collector attempted to collect debt that had been discharged in bankruptcy).

Rather than asserting the validity of the underlying debt, defendants insist they are entitled to rely on Allied Funding Group's representations to avoid FDCPA liability. In support, they cite cases holding debt collectors are not required to conduct independent investigations into debts referred to them. Defendants misread the case law. It is not enough to blindly rely on creditors' representations. The FDCPA is a strict liability statute, imposing liability even without fault. *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009). The FDCPA, however, provides an affirmative defense. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). A debt collector may avoid liability by showing "by a preponderance of

evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 1692k(c); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1609 (2010); *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536–39 (7th Cir. 2005). Defendants' reliance on Allied Funding Group's representation might establish that the error was unintentional and bona fide. But defendants present no evidence about the procedures they have in place to prevent such errors. *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1114 (7th Cir. 2008) ("Unless a party maintains reasonable procedures to avert a violation, the defense does not apply"). Defendants' cited cases disclose information about the collector-creditor relationship and procedures in place that establish reliance was reasonable. *See Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004) ("[Debt collector] had adequate procedures in place, first by relying on [creditor] not to forward accounts in bankruptcy, and then by assuring that any accounts mistakenly referred for collection were promptly removed from the collection list"); *Turner*, 330 F.3d at 995–96 (suggesting in dicta that reasonable procedure could include "an agreement with its creditor-clients that debts are current and the demand letter was sent soon after the assignment"); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1141–42 (N.D. Ill.1998) (Castillo, J.) (finding sufficient procedures designed to "instruct clients to seek legal counsel in determining which fees are legally due"). The remaining case, *Fisher v. Asset Acceptance, LLC.*, No. 04 C 2585, 2005 WL 1799275 (N.D. Ill. July 26, 2005) (Manning, J.), is unpersuasive because the court made no mention of § 1692k. Defendants bear the burden to establish all the elements of an affirmative defense, *Jenkins v. Heintz*, 124 F.3d 824, 834–35 (7th Cir. 1997), and here they fail to even cite § 1692k. Their silence about the procedures in place to prevent FDCPA

8

violations makes summary judgment inappropriate. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948–49 (9th Cir. 2011) ("[T]he bona fide error defense does not protect a debt collector whose reliance on a creditor's representation is unreasonable. Unwarranted reliance on a client is not a procedure to avoid error" (internal quotation marks and citation omitted)); *Foster v. Sherman Acquisition, LP*, No. 04 C 1072, 2005 WL 588995, at *3 (N.D. Ill. Mar. 8, 2005) (Gottschall, J.) (noting on motion to dismiss that naked assertion that defendant is entitled to rely on creditor's representation is insufficient to establish affirmative defense). Summary judgment on the claim that NCSPLUS and Cooke falsely represented the amount of the alleged debt in violation of § 1692e(2) is denied.

**B. Authorized Amount**

Kasalo contends the amount of interest charged on the debt was unlawful, and therefore defendants' collection attempt violated the FDCPA. Section 1692f prohibits using unfair or unconscionable means to collect a debt, including "[t]he collection of any amount (including any interest, fee charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Assuming defendants attempted to collect only the amount reported by Allied Funding Group—without adding extra charges—it is unclear whether § 1692f would impose liability on a debt collector for the creditor's miscalculations. *Compare Turner*, 330 F.3d at 997–98 (§ 1692f not implicated simply by attempting to collect debt that was discharged in bankruptcy), *with Seeger*, 548 F.3d at 1112–13 (debt collector liable under § 1692f for adding unauthorized collection fees to amount reported by creditor). *But see Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1273 (11th Cir. 2011) (finding § 1692f violation based on debt collector "indiscriminately accept[ing] creditor's] interest

9

charges as factually accurate and proceed[ing] to collect them"). However, there is no admissible evidence of the actual amount Allied Funding Group placed for collection, so the court cannot assume NCSPLUS did not add extra charges.

It is uncontested that the amount owed to Williams & Associates was $88.26 in December 2007, and it ballooned more than 1,000% to an asserted $1,020.03 in a little over a year. Viewed in a light most favorable to Kasalo, a reasonable inference may be drawn that the amount is usurious or otherwise unlawful. Defendants do not argue the balance increase is authorized by either the promissory note or the Illinois Interest Act, 815 ILCS 205 *et seq.* Instead, they argue the status of the debt is irrelevant because they were entitled to rely on Allied Funding Group's representation. However, as discussed above, defendants are not entitled to rely blindly on Allied Funding Group's representations. Summary judgment on the claim that NCSPLUS and Cooke attempted to collect an amount not authorized by the promissory note or permitted by law in violation of § 1692f(1) is denied.

## C. Threat to Credit Report Debt

Kasalo contends NCSPLUS falsely threatened to report the debt to national credit reporting businesses even though it never intended to do so. The prohibition on false, deceptive, or misleading representations extends to "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." § 1692e(5). It is undisputed that NCSPLUS's practice is to report all collection accounts placed by Allied Funding Group to national credit bureaus. But if contacted by an attorney, all collection activity ceases, including credit reporting. The record reflects that it is undisputed that NCSPLUS intended to carry out its initial threat to report

Kasalo's debt. Summary judgment on the claim that NCSPLUS falsely threatened to credit report the debt in violation of § 1692e(5) is granted.

## D. Flat-Rating

Kasalo claims Cooke's letter falsely implies an attorney was involved when in fact Cooke had no meaningful involvement in the debt collection efforts. Falsely implying an attorney is involved violates § 1692e(3) and implicates the prohibition in § 1692j on "flat-rating." Section 1692j makes it unlawful "to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the [debt] collection . . . when in fact such person is not so participating." An attorney, like Cooke, involved in debt collection is required to use his own professional judgment that the debt is valid, delinquent, and ripe for legal action. *Nielsen v. Dickerson*, 307 F.3d 623, 635 (7th Cir. 2002). "The classic 'flat-rater' effectively sells his letterhead to the creditor, often in exchange for a per-letter fee, so that the creditor can prepare its own delinquency letters on that letterhead" and is not involved in the debt collection in any meaningful manner. *Id.* at 633, 635.

It is an open question whether Cooke could be held liable both as a debt collector under § 1692e and as a flat-rater under § 1692j; a flat-rater by definition is not involved in the collection of a debt, while a debt collector by definition is involved. *See Nielsen*, 307 F.3d at 639–40. Regardless, if Cooke was meaningfully involved in the debt collection, Kasalo cannot show either a false representation under § 1692e or nonparticipation under § 1692j. Factors used to determine whether an attorney is meaningfully involved include (1) who made the decision to send a debtor a letter; (2) whether the attorney had access to the debtor's file; (3) whether the

attorney's actions required professional judgment or were merely ministerial tasks; (4) the amount of individualized assessment evident in the letter, particularly when an attorney issues a high number of form letters; (5) the attorney's involvement in handling responses to the letter, including the authority to negotiate a payment plan or settle the debt; (6) the attorney's fee arrangement with the debt collector; and (7) whether the attorney ever took legal action on behalf of the debt collector. *Id.* at 635–38.

Defendants present evidence that Cooke was meaningfully involved in the collection. It is uncontested that he had access to Kasalo's file and actually reviewed the file before deciding to send a letter to Kasalo. As part of his review, Cooke confirmed the amount of debt sought matched the amount stated in the file, reviewed the promissory note, and ensured the file did not contain information that would prohibit him from contacting Kasalo. Cooke created, reviewed, and authorized the letter sent to Kasalo. Kasalo's primary surviving argument is that Cooke's letter is nearly identical to the offending letter in *Nielsen*, 307 F.3d at 629. However, form letters are not *per se* violations; what is important are the circumstances surrounding the creation of the letter and the attorney's followup to the letter. Cooke had access to Kasalo's file and actually reviewed it before sending the letter. This is sufficient in the absence of countervailing evidence to grant summary judgment to defendants on the claim that NCSPLUS and Cooke engaged in prohibited flat-rating in violation of § 1692e(3), (10), and § 1692j.

## IV. Conclusion

Summary judgment is granted as to whether NCSPLUS falsely threatened to credit report the debt in violation of § 1692e(5); as to whether NCSPLUS and Cooke engaged in prohibited flat-rating in violation of § 1692e(3), (10), and § 1692j; and as to the abandoned claims.

12

Summary judgment is denied as to whether defendants misrepresented the amount of the debt in violation of § 1692e, and as to whether defendants attempted to collect an unauthorized amount in violation of § 1692f.

ENTER:

Suzanne B. Conlon
United States District Judge

June 27, 2011